Exhibit "B"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. 1:23-CV-02197 |
| | ) | |
| G&D CONSTUCTION GROUP, INC., GEORGE PUHA and METCON, INC. | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, The Cincinnati Specialty Underwriters Insurance Company ("CSU"), Plaintiff in the above-styled action, and hereby files this Second Amended Complaint for Declaratory Judgment, showing the Court as follows:

## PRELIMINARY STATEMENT

This action is brought pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, seeking declaratory judgment as to the rights and other legal obligations of the interested parties identified herein regarding issues of actual controversy. The owner of a hotel sued the general contractor, Metcon, Inc. ("Metcon") for defects in the hotel's construction. In turn, Metcon sued G&D Construction, Inc. ("G&D") and George Puha a/k/a Gheorghe

Puha ("Puha"), alleging that these defendants are liable for any judgment obtained by the owner because G&D performed defective work installing the exterior insulation finishing system ("EIFs") at the hotel. CSU seeks a judgment declaring that it does not owe a defense or indemnity to G&D in the suit filed by Metcon.

## **JURISDICTION**

1.  CSU brings this action for declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for a declaration of the rights and other legal relations of the interested parties identified herein regarding issues of actual controversy.

2.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the matter in controversy exceeds the sum of $75,000.

3.  There is an actual case or controversy concerning CSU's coverage obligations, if any, for claims asserted in the lawsuit, *Metcon, Inc. v. G&D Construction Group, Inc.*, Superior Court of Gwinnett County, State of Georgia, Civil Action No. 21-A-00102-3 (the "Underlying Action") such that this Court may declare rights and obligations of the parties under 28 U.S.C. § 2201 and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE.

4.  The issues in controversy in this action should be determined under the laws of the State of Georgia as the policies at issue were contracted for, delivered

in, and were understood by the parties thereto to be controlled by the laws of the State of Georgia.

5.    This Court has personal jurisdiction over all defendants.

## VENUE

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and LR 3.1, N.D.Ga., because the Policy was delivered to the named insured at PO Box 490817, Lawrenceville, Georgia, in Gwinnett County, Georgia.

## PARTIES

7.    Plaintiff CSU is a foreign insurance company incorporated in the State of Delaware with its principal place of business located at 6200 South Gilmore Road, Fairfield, Ohio 45014. Thus, CSU is a citizen of the State of Delaware and Ohio for purposes of 28 U.S.C. § 1332(c)(1).

8.    Defendant G&D is a domestic profit corporation, currently dissolved, with a principal place of business located at 1582 Azalea Drive, Lawrenceville, Georgia 30049. Thus, G&D is a citizen of the State of Georgia for purposes of 28 U.S.C. § 1332(c)(1).

9.    Defendant Metcon is a foreign company incorporated in the State of North Carolina with a principal place of business located at 763 Comtech Drive, Pembroke, North Carolina 28372. Thus, Metcon is a citizen of the State of North Carolina for purposes of 28 U.S.C. § 1332(c)(1).

10.     Defendant George Puha aka Gheorghe Puha ("Puha") is an individual residing in Georgia at 1582 Azalea Drive, Lawrenceville, Georgia. Thus, Puha is a citizen of the State of Georgia for purposes of 28 U.S.C. § 1332(a).

11.     Each Defendant has been joined in this declaratory judgment action to involve all individuals or entities who have a financial or other interest in the outcome of the coverage issues to be decided in this declaratory judgment action.

## **INTRODUCTION**

12.     The relevant CSU policies (collectively referred to as the "Policies") are:

   a.     CSU policy no. CSU00069555, term period April 22, 2015, to April 22, 2016, including commercial general liability insurance coverage (the "First CGL Policy"). [Ex. 1.]

   b.     CSU policy no. CSU0069556, term period April 22, 2015, to April 22, 2016, including excess insurance coverage (the "First Excess Policy"). [Ex. 2.]

   c.     CSU policy no. CSU00069555, term period April 22, 2016, to December 9, 2016, including commercial general liability insurance coverage (the "Second CGL Policy"). [Ex. 3.]

   d.     CSU policy no. CSU0069556, term period April 22, 2016, to December 9, 2016, including excess insurance coverage (the "Second Excess Policy"). [Ex. 4.]

13.    On May 28, 2020, NP 301, LLC, (the "Owner") filed a Complaint for Damages for Breach of Contract (the "Original Complaint") against Metcon in *NP 301, LLC, v. Metcon, Inc.,* the Superior Court of Fulton County, State of Georgia, Civil Action No. 2020CV336620 (the "Original Action"). [Ex. 5.]

14.    On May 16, 2023, Metcon filed a Second Amended Complaint (the "Second Amended Complaint") against G&D in *Metcon, Inc. v. G&D Construction Group, Inc.*, Superior Court of Gwinnett County, State of Georgia, Civil Action No. 21-A-00102-3 (the "Underlying Action"). [Ex. 6.]

## FACTUAL ALLEGATIONS

### THE UNDERLYING ACTION

15.    The Owner filed the Original Action against Metcon alone on May 28, 2020. In the Original Complaint, the Owner contends that it entered into a contract with Metcon to construct the SpringHill Suites Hotel located in Lumberton, North Carolina (the "Hotel"). [Ex. 5, Original Compl. ¶ 4.]

16.    In the Original Complaint, the Owner alleges that there was water damage at the Hotel and Metcon acted to remedy the water intrusion and apparent water intrusion at the Hotel. [Ex. 5, Original Compl. ¶ 8.]

17.    In the Original Complaint, the Owner alleges that Metcon furnished the Owner a maintenance bond in penal sum of $300,000.00 such that should Metcon fail to resolve any construction defect without cost to Owner for a

period of three years post September 11, 2016, the sureties and Metcon would be liable up to the penal sum for costs, expenses, and damages suffered by the Owner. [Ex. 5, Original Compl. ¶ 9.]

18.  In the Original Complaint, it is alleged that the Hotel experienced renewed damage as a result of the defective construction by Metcon, which allowed water intrusion and accumulation in places not in compliance with the contract with Metcon. [Ex. 5, Original Compl. ¶ 10.]

19.  In the Original Complaint, the Owner alleges that in February 2019, testing revealed a previously hidden building envelope-wide problem due to the application of the exterior EIFs. [Ex. 5, Original Compl. ¶ 10.]

20.  In the Original Complaint, the Owner sought more than 2.2 million from Metcon for breach of contract and attorneys' fees and expenses. [Ex. 5, Original Compl. ¶ ¶ 15-25.]

21.  On January 7, 2021, Metcon filed the Underlying Action against G&D.

22.  On May 16, 2023, Metcon filed the Second Amended Complaint concerning the alleged defective EIFs work G&D performed on the Hotel. [Ex. 6, Sec. Am. Compl. ¶¶ 15-16.]

23.  In the Second Amended Complaint, Metcon alleges that the Owner contracted with Metcon to act as a general contractor in the construction of the Hotel. [Ex. 6, Sec. Am. Compl. ¶ 7.]

24.   In the Second Amended Complaint, Metcon alleges that Metcon in turn subcontracted with G&D to perform EIFs installation work at the Hotel. [Ex. 6, Sec. Am. Compl. ¶¶ 9-10.]

25.   In the Second Amended Complaint, Metcon alleges that at all times relevant owned, managed, controlled, and/or was acting as an agent for G&D and is the alter ego of G&D. [Ex. 6, Sec. Am. Compl. ¶ 3.]

26.   In the Second Amended Complaint, Metcon alleges that, in the Original Action, the Owner contended that the EIFs installation work was improperly done at the Hotel, leading to water intrusion and damage outside the scope of G&D's work, including sheathing, framing, and other building components. [Ex. 6, Sec. Am. Compl. ¶¶ 14-16.]

27.   In the Second Amended Complaint, Metcon alleges that G&D made false and fraudulent representations to Metcon with the intent to deceive concerning the procurement of proper insurance coverage. [Ex. 6, Sec. Am. Compl. ¶¶ 12-13, 21.]

28.   In the Second Amended Complaint, Metcon alleges that G&D and Puha (collectively the "G&D Defendants") made false and fraudulent misrepresentations concerning the non-existence of the written contract between G&D and Metcon in effort to avoid arbitration and disclaim any

liability from Owner's cause of action and arbitration concerning the Project. [Ex. 6, Sec. Am. Compl. ¶ 20.]

29.    In the Second Amended Complaint, Metcon alleges that the G&D Defendants breached the written subcontract with Metcon because the installation of the EIFs at the Hotel was improper; they failed to participate in arbitration after notice and demand; failed to indemnify Metcon; and failed to maintain appropriate insurance as required by the subcontract. [Ex. 6, Sec. Am. Compl. ¶¶ 22-39.]

30.    In the Second Amended Complaint, Metcon alleges that the G&D Defendants breached warranties to Metcon and the Owner, both express and implied, concerning the work performed at the Hotel. [Ex. 6, Sec. Am. Compl. ¶¶ 40-43.]

31.    In the Second Amended Complaint, Metcon alleges that the G&D Defendants were negligent in performing their scope of work in compliance with the subcontract, plans, specifications, industry standards, and/or building codes, and the applicable standard of care. [Ex. 6, Sec. Am. Compl. ¶¶ 43-50.]

32.    In the Second Amended Complaint, Metcon alleges that the G&D Defendants are liable to Metcon under common law and contractual indemnity because any damages that Metcon sustains with respect to the Original Action was the result of the acts, omissions, negligence, breach of contract, and/or breaches

of warranty by the G&D Defendants, while Metcon was without fault. [Ex. 6, Am. Compl. ¶¶ 51-55.]

33. In the Second Amended Complaint, Metcon alleges that the G&D Defendants are liable for breach of implied contract to perform the EIFs work at the Hotel and to indemnify Metcon or provide contribution for any liability that may be adjudicated against Metcon in favor of the Owner. [Ex. 6, Sec. Am. Compl. ¶¶ 56-63.]

34. In the Second Amended Complaint, Metcon alleges that the G&D Defendants willfully and fraudulently misrepresented material facts regarding the lack of a written contract to avoid arbitration; willfully and fraudulently misrepresented material facts regarding the procurement of insurance; and willfully and fraudulently misrepresented that the insurance procured would provide Metcon coverage as an additional insured. For these misrepresentations, Metcon seeks damages, attorneys' fees and costs, and punitive damages. [Ex. 6, Sec. Am. Compl. ¶¶ 64-70.]

35. In the Second Amended Complaint, Metcon alleges that the G&D Defendants negligently misrepresented the existence of the written contract; negligently misrepresented the existence of adequate insurance; and misrepresented that Metcon would constitute an additional insured under the policy. [Ex. 6, Sec. Am. Compl. ¶¶ 71-76.]

36.     In the Second Amended Complaint, Metcon alleges that G&D and Puha are alter egos of each other and are thus liable for each other's conduct with respect to the Hotel and associated damages; that the G&D Defendants operated as joint venturers, partners, members, contractors, and/or agents on the Hotel; that the G&D Defendants are amalgamated so to blur the legal distinctions; that the corporate shield should be pierced to impose liability on Puha. [Ex. 6, Sec. Am. Compl. ¶¶ 77-84.]

37.     In the Second Amended Complaint, Metcon alleges that the G&D Defendants owe it attorneys' fees and the expenses of litigation under O.C.G.A. § 13-6-11. [Ex. 6, Sec. Am. Compl. ¶¶ 85-87.]

38.     Metcon seeks compensatory damages, attorneys' fees, expenses and costs of litigation, punitive damages, and any further relief the court deems equitable and just. [Ex. 6, Sec. Am. Compl. ¶ Prayer.]

39.     On August 25, 2015, Metcon sent a letter to George Puha, registered agent and CEO of G&D, and advised that G&D had installed the EIFs system incorrectly and out of compliance with the relevant subcontract. Metcon demanded that G&D remedy the defects. [Ex. 7, Letter of August 25, 2015.]

40.     On October 11, 2017, Metcon sent a letter to George Puha, registered agent and CEO of G&D, and demanded a defense and indemnification from G&D

due to water penetration and mold damage at the Hotel arising from G&D's defective EIFs work. [Ex. 8, Letter of October 11, 2017.]

41. G&D did not notify CSU of Metcon's claim that EIFs work performed by G&D was defective and had caused or was causing water intrusion or mold damage at the Hotel; and G&D did not provide CSU a copy of the October 11, 2017, letter.

42. On October 30, 2020, Metcon sent a letter to George Puha, registered agent and CEO of G&D, notifying G&D of the Original Action, which included allegations that the EIFs at the Hotel was defectively constructed. [Ex. 9, Letter of October 30, 2020.]

43. G&D did not notify CSU of the Original Action or the claims that the EIFs work at the Hotel was defectively constructed; and G&D did not provide CSU a copy of the October 30, 2020, letter.

44. CSU received notice of the alleged defective EIFs construction at the Hotel and of the Original Action when it received a letter from Metcon on December 31, 2020. [Ex. 10, Letter of December 31, 2020.]

45. CSU issued a reservation of rights to G&D, dated January 20, 2021, regarding the Original Action, and specifically advised as follows:

> If G&D receives or has received any legal paperwork, pleadings, documents, summonses, complaints, or other legal paperwork pertaining to the Lawsuit, Arbitration, NP 301, or Metcon, please forward such documentation to my attention.

[Ex. 11, Letter of January 20, 2021 (emphasis in original).]

46.  Metcon served G&D with the Underlying Action on January 14, 2021.

47.  G&D did not notify CSU of the Underlying Action and did not forward a copy of the summons and complaint to CSU.

48.  CSU received notice of the Underlying Lawsuit on February 8, 2021, through an email from Metcon's defense counsel. [Ex. 12, Email of February 8, 2021.]

49.  On February 11, 2021, CSU sent to G&D a Supplement to the Reservation of Rights, assigning counsel Robert A. Luskin, Esq. at Goodman McGuffey, LLP, to defend G&D in the Underlying Action. [Ex. 13, Letter of February 11, 2021.]

50.  On March 9, 2021, March 13, 2023, and July 14, 2023, CSU supplemented the reservation of rights, continuing to provide the G&D Defendants a defense to the claims and allegations in the Underlying Action. [Ex. 14, Letters of March 9, 2021, March 13, 2023, July 14, 2023, and January 3, 2024.]

## THIS LAWSUIT

51.  CSU has provided the G&D Defendants a defense to the claims and damages asserted in the Underlying Action, subject to a full and complete reservation of rights.

52.  The G&D Defendants had notice that Metcon claimed there were defects in G&D's EIFs work at the Hotel as early as August 25, 2015, but did not notify

CSU or provide CSU copies of the notices, demands, or other legal documents they received. This is a failure to fulfill conditions precedent to coverage under the Policies, and, therefore, this Court should declare that CSU is not obligated to defend or indemnify the G&D Defendants in the Underlying Action

53.    The First CGL Policy and First Excess Policy do not provide coverage for costs, damages, or liabilities arising from EIFs as set forth in the endorsement titled, **Exclusion – Exterior Insulation and Finish Systems ("EIFs") and Direct Applied Exterior Finish Systems ("DEFS")**, and the endorsement titled, **Exclusion – Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form**; therefore, this Court should declare that CSU is not obligated to defend or indemnify the G&D Defendants in the Underlying Action.

54.    The Second CGL Policy and Second Excess Policy do not provide coverage for property damage that first occurred prior to the Effective date and is alleged to be in the process of occurring as of the Effective date, as set forth in the **Exclusion – Prior Injury or Damage** (the "Prior Injury Exclusion"); therefore, this Court should declare that CSU is not obligated to defend or indemnify the G&D Defendants in the Underlying Action.

55. The Second Excess Policy does not provide coverage for costs, damages, or liabilities arising from EIFs as set forth in the endorsement titled, **Exclusion – Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form**, for the time period April 22, 2016, to May 16, 2016; therefore, this Court should declare that CSU is not obligated to defend or indemnify the G&D Defendants in the Underlying Action.

56. None of the Policies provide coverage for the G&D Defendants' alleged negligent, willful, or intentional misrepresentations because:

    a. Metcon is not seeking damages for "bodily injury", "property damage" or "personal and advertising injury" as defined by the Policies;

    b. The Policies do not provide coverage for "intended" injury; and

    c. The conduct for which Metcon complains did not occur during the Policy periods.

57. The Excess Policies do not provide coverage for punitive damages.

58. The Policies and Georgia law do not provide coverage for attorneys' costs and litigation expenses.

59. For these reasons, this Court should declare that CSU has no duty to defend or indemnify the G&D Defendants in the Underlying Action entirely.

## THE POLICY LANGUAGE

60. The First CGL Policy was in effect from April 22, 2015, to April 22, 2016, and includes commercial general liability coverage. [Ex. 1]

61. The Second CGL Policy was initially issued to be in effect from April 22, 2016, to April 22, 2017, but was cancelled on December 9, 2016, for nonpayment. The Second CGL Policy includes commercial general liability coverage. [Ex. 3; Ex. 15, Termination Letter.]

62. The First Excess Policy was in effect from April 22, 2015, to April 22, 2016, and contains excess insurance coverage. [Ex. 2.]

63. The Second Excess Policy was issued to be in effect from April 22, 2016, to April 22, 2017, but was cancelled on December 9, 2016, for nonpayment. The Second Excess Policy contains excess insurance coverage. [Ex. 4; Ex. 15, Termination Letter.]

64. The relevant Insuring Agreement in both the First and Second CGL Policies are the same and are found in Coverage A of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (Form CG 00 01 04 13) (the "CGL Form"). The Insuring Agreement provides, in pertinent part:

    **1.**    **Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any

"suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

\*\*\*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[Ex. 1, p. 14; Ex. 3, p. 17.]

65.    The relevant Insuring Agreement in the First Excess Policy and Second Excess Policy is found in the Commercial Excess Liability Coverage Form ("Excess Form"), **Section I-Coverages** as follows:

**1.  Insuring Agreement**

**a.** We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any

> insured becomes legally obligated to pay as damages to which insurance provided under this Coverage Part applies.

[Ex. 2, p.17; Ex. 4, p. 17.]

66.  However, even if the claims and damages fall within the relevant insuring agreements of the Policies, coverage is subject to the G&D Defendants satisfaction of its duties under the Policies, which are conditions precedent to coverage.

### A.  Failure to Provide Notice of an Occurrence and/or Claim as Soon as Practicable as a Condition Precedent to Coverage

67.  The First and Second CGL Policies state the following duties of G&D in **Section IV – Commercial General Liability Conditions** of the CGL Form that must be fulfilled as conditions precedent to coverage under the Policies:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
> **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";…..

[Ex. 1, pp. 26-27; Ex. 3, pp. 27-28.]

68.    Similarly, the First and Second Excess Policies state the following duties of the G&D Defendants in **Section III –Conditions** of the Excess Form, which are conditions precedent to coverage under those policies:

*** 

**3.** Duties in the Event of an Event, Claim or Suit

*** 

**b.** If a claim is made or suit is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or suit and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

**c.** You and any other insured involved must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**(2)** Authorize us to obtain records and other information; …

*** 

[Ex. 2, p. 20; Ex. 4, p. 20.]

69.    The First and Second Excess Policies contain an Endorsement titled **Georgia Changes** that modifies the G&D Defendants' duties under the Excess Forms:

> **A.** Paragraph **3.a.** of **Duties In The Event Of An Event, Claim Or Suit** Provisions of **Section III - Conditions** is replaced by the following:
>
>> **a.** In the event of an "event", claim or suit, we or our representative must receive prompt notice of the "event". Include:
>>
>>> **(1)** How, when and where the "event" occurred;
>>>
>>> **(2)** The insured's name and address; and
>>>
>>> **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.
>>
>> The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "event", may be satisfied by an injured third party who, as the result of such "event", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

[Ex. 2, p 24; Ex. 4, p. 24.]

70.    As a condition precedent to coverage under the CGL Policies, the G&D Defendants were required to notify CSU as soon as practicable of an "occurrence" made against the G&D Defendants.

71.    As a condition precedent to coverage under the Excess Policies, the G&D Defendants were required to provide prompt notice of an "event", defined to include an occurrence promptly to CGL.

72.    As a condition precedent to coverage under the Policies, the G&D Defendants were required to notify CSU as soon as practicable of a claim made against the G&D Defendants.

67.    As a condition precedent to coverage under the Policies, the G&D Defendants must "immediately send [CSU] copies of any demands, notices, summonses or legal papers received in connect with the claim…."

68.    In the Complaint in the Underlying Action, Metcon seeks damages caused by alleged defects in the installation of the EIFs at the Hotel by the G&D Defendants for which Metcon is held liable in the Original Action.

69.    On August 25, 2015, G&D received notice from Metcon that Metcon demanded G&D remedy the defects in the improperly installed EIFs system at the Hotel, but the G&D Defendants did not notify CSU as soon as practicable of the alleged occurrence or of Metcon's claim, did not notify CSU as soon as practicable, and did not immediately send a copy of the notice to CSU.

70.    The notice on August 25, 2015, also meets the definition of "Event" under the Excess Policies, but the G&D Defendants did not provide CSU prompt notice of the notice.

71.    On October 11, 2017, Metcon demanded a defense and indemnification from G&D in a letter due to alleged water penetration and damage at the Hotel

arising from G&D's defective EIFs work, but the G&D Defendants did not notify CSU as soon as practicable of Metcon's demand and did not immediately send a copy of the demand to CSU.

72. On October 30, 2020, Metcon notified G&D of the filing of the Original Action, which included allegations that the EIFs at the Hotel was defectively constructed, but the G&D Defendants did not notify CSU as soon as practicable of Metcon's notice and did not immediately send a copy of the notice to CSU.

73. CSU learned of the Original Action from Metcon, sixty days after notice to the G&D Defendants.

74. For these reasons, the G&D Defendants have failed to comply with the conditions precedent for coverage under the Policies by failing to provide notice of the claims asserted by Metcon as soon as practicable and failing to send CSU copies of Metcon's demands or notices immediately on August 25, 2015, October 11, 2017, and October 30, 2020. As such, this Court should declare that CSU does not have a duty to defend the G&D Defendants in the Underlying Action or indemnify the G&D Defendants for the damages that may be awarded in the Underlying Action.

**B.    The First CGL Policy Disclaims Coverage for Damages arising from Exterior Insulation and Finish Systems ("EIFs")**

75.    The First CGL Policy contains the Endorsement titled **Exclusion – Exterior Insulation and Finish Systems** (the "EIFs Exclusion") which excludes coverage under the Insuring Agreement in the CGL Form as follows:

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

[Ex. 1, p. 67.]

76.    In the Second Amended Complaint, Metcon seeks damages caused by alleged defects in the G&D Defendants' installation of EIFs at the Hotel for which Metcon may be held liable or has been held liable in the Original Action.

77.    The EIFs Exclusion in the First CGL Policy excludes coverage "property damage" "arising out of, caused by, or attributable to, whether in whole or in

part," to the construction, fabrication, preparation, installation, or application of an EIFs system or any part of the EIFs system.

78.  The EIFs Exclusion excludes coverage for "property damage" arising out of, caused by, or attributable to the G&D Defendants' work with respect to any exterior component, fixture, or feature of any structure if an EIFs system is used on that part of that structure containing that component, fixture or feature.

79.  As the claims against the G&D Defendants in the Second Amended Complaint arise out of the installation of the EIFs at the Hotel, the Court should declare that CSU does not have a duty to defend or indemnify the G&D Defendants under the First CGL Policy for the damages that may be awarded in the Underlying Lawsuit.

### C.  The First Excess Policy Disclaims Coverage for Damages arising from EIFs

80.  The First Excess Policy contains the Endorsement **Exclusion – Exterior Insulation and Finish System ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFs") – Broad Form**, which modifies the coverage provided under the Insuring Agreement in the Excess Form as follows:

**A.** The following exclusion is added to Paragraph 2. Exclusions of Section I - Coverages:

Insurance provided by this Coverage Part does not apply to any liability that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:

**a.** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**b.** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

This exclusion also applies to any liability:

**a.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an insured contract;

**b.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

**c.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warning or instructions with regard to a "wall finish system".

[Ex. 2, p. 26.]

81.    As the claims against the G&D Defendants in the Second Amended Complaint arise out of the installation of the EIFs at the Hotel and resulting damage due to water intrusion, the Court should declare that CSU does not have a duty to defend or indemnify the G&D Defendants for the damages that may be awarded in the Underlying Action under the First Excess Policy.

### D.    The Second CGL Policy Disclaims Coverage arising from Prior Injury or Damage

82.    The Second CGL Policy contains the Endorsement, **Exclusion – Prior Injury or Damage,** which excludes coverage as follows:

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage**:

This insurance does not apply to any "bodily injury" or "property damage" that:

**1.** first occurred prior to the Effective date of this Coverage Part;

**2.** is alleged to be in the process of occurring as of the Effective date of this Coverage Part; or

**3.** is in the process of settlement, adjustment or "suit".

This exclusion applies to all continuing injury or damage:

**1.** arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or

**2.** at the same or adjacent location; or

**3.** from the same or similar work; or

**4.** from the same product or service.

[Ex. 3, p.36.]

83.    On August 25, 2015, Metcon advised the G&D Defendants that there were defects in the EIFs work performed at the Hotel, before the Second CGL Policy term.

84.    In the Original Complaint, the Owner alleged that there was water damage at the Hotel arising from the EIFs work that predate the effective date of the Second CGL Policy.

85.    In the Original Complaint, the Owner alleged that all damages due to the EIFs work arises from defects in the installation of the EIFs at the time of construction. Therefore, the Second CGL Policy excludes the damages sought by Metcon in the Underlying Action.

### E.    The Second Excess Policy Disclaims Coverage for Damages arising from Prior Injury or Damage

86.    The Second Excess Policy states that,

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance….

[Ex. 4, p. 17.]

87.    Therefore, as the Second CGL Policy does not provide coverage for the damages arising from the EIFs work performed by G&D at the Hotel under the **Exclusion – Prior Injury or Damage**, there is no coverage under the Second Excess Policy.

### F.    The Second Excess Policy Disclaims Coverage for Damages arising from EIFs

88.    The Second Excess Policy contains the Endorsement **Exclusion – Exterior Insulation and Finish System ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFs") – Broad Form**, which precludes coverage for any liability that arises out of, is caused by, or is attributable to "[t]he design…construction, fabrication, preparation, installation, application, maintenance, disposal or repair" of EIFs or "[a]ny work or operations conducted by or on behalf of any insured on or to" an EIFs system or any component or building or stricture to which an EIFs system attaches. [Ex. 4, p. 26.]

89.    As the claims against G&D in the Second Amended Complaint arise out of the installation of the EIFs at the Hotel and resulting damage due to water intrusion, the Court should declare that CSU does not have a duty to defend or indemnify the G&D Defendants for the damages that may be awarded in the Underlying Lawsuit under the Second Excess Policy for the period of time from April 22, 2016, to May 16, 2016.

### G.    The Policies Do Not Provide Coverage for Claims that the G&D Defendants Negligently, Willfully, or Intentionally Misrepresented the Existence of the Contract, the Existence of Adequate Insurance, or Metcon's Position as an Additional Insured.

90.    In the Second Amended Complaint, the alleged misrepresentation of adequate insurance and Metcon's position as an additional insured occurred before the first policy period, and the alleged misrepresentation of the existence of a written contract occurred after the last policy period; therefore, there is no coverage.

91.    The damages that Metcon seeks for the G&D Defendants' misrepresentations do not qualify as covered damages under the Policies; therefore, the Policies do not provide coverage.

92.    The Policies do not provide coverage for the allegations that the G&D Defendants acted intentionally and willfully to mislead Metcon because such conduct is not an "occurrence" as defined in the Policies and are further excluded under the following provisions: **a. Expected or Intended Injury** found in **2. Exclusions** of the CGL Forms; and **2. Exclusions** found in the Excess Forms.

### H.    The Excess Policies Disclaim Coverage for Punitive Damages

93.    Metcon seeks punitive damages for the G&D Defendants' alleged misrepresentations, but the Excess Forms do not provide coverage for such

damages under **f. Fines, Penalties, Punitive, Exemplary, Multiplied or Uninsurable Damages** in **2. Exclusions**.

### I.    The Policies Disclaim Coverage for Attorneys' Fees

94.    Metcon seeks attorneys' fees and litigation costs under O.C.G.A. § 13-6-11; the Policies do not provide coverage for such costs under Georgia law, paragraph **e.** of **Supplementary Payments – Coverages A and B** of the CGL Forms, and **2. Exclusions** in the Excess Forms.

### J.    The Policies Do Not Provide Coverage to Puha

95.    Puha does not qualify as an insured under the Policies as an owner, manager, controller, agent, joint venturer, partner, member, or contractor under **Section II – Who is An Insured** of the First and Second CGL Policies or under the First and Second Excess Policies. [Ex. 1, p. 25; Ex. 2, p. 17; Ex. 3, p. 26; Ex. 4, p. 17.]

96.    The Policies do not provide coverage to Puha as alter ego for G&D for the same reason that the Policies do not provide coverage to G&D.

97.    The Policies do not provide coverage to Puha for expected or intended injury or for conduct that does not qualify as an occurrence or accident.

### CLAIM FOR DECLARATORY RELIEF

1.    CSU incorporates by reference the allegations set forth in Paragraphs 1 through 97 above.

2.      An actual controversy now exists between CSU and the G&D Defendants regarding whether the Policies provide coverage to the G&D Defendants for the claims and damages in the Underlying Action.

3.      There is no coverage under the First Policy, the Second Policy, the First Excess Policy, or the Second Excess Policy for the claims and damages alleged against the G&D Defendants in the Underlying Action.

4.      In light of the Policy language and the allegations in the Underlying Action, CSU seeks a Declaration that it does not have any duty or obligation under the Policies to defend or indemnify the G&D Defendants against the claims and damages sought against the G&D Defendants in the Underlying Action.

5.      A genuine dispute exists regarding the coverage issues set forth above and a declaratory judgment is necessary to clarify this uncertainty. There is such immediacy of choice imposed upon CSU this time as to justify an adjudication by declaratory judgment.

6.      If CSU's contentions are correct, then there would be no duty to provide a defense to the G&D Defendants in the Underlying Action, no duty to indemnify the G&D Defendants for any damages or other relief that Metcon seeks in the Underlying Action. Thus, CSU requires a declaration as to its obligations to the G&D Defendants under the Policy, and without such

declaration it faces exposure of a charge and penalty for breach of contract and/or bad faith in this State.

7.   CSU has acted properly and promptly by investigating the grounds for non-coverage upon receiving notice of claim, has provided the G&D Defendants a defense in the Underlying Lawsuit prior to filing this Declaratory Judgment, and now seeking declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, CSU respectfully requests that this Court:

8.   A trial by jury;

9.   Issue a judgment declaring that CSU does not owe a defense to the G&D Defendants under the Policy for the claims and damages asserted in the Underlying Action;

10. Issue a judgment declaring that CSU is not obligated to indemnify the G&D Defendants under the Policy for the claims and damages asserted in the Underlying Action; and

11. Grant such further and necessary relief as the Court deems just and proper pursuant to 28 U.S.C. § 2202.

Respectfully submitted this 9th day of January 2024.

FREEMAN MATHIS & GARRY, LLP

/s/ Matthew F. Boyer
MATTHEW F. BOYER
Georgia Bar No.:  141512
mboyer@fmglaw.com
/s/ Alexia R. Roney
ALEXIA R. RONEY
Georgia Bar No.:  581777
aroney@fmglaw.com
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
770-818-0000
770-937-9960 (Fax)

Attorneys for Plaintiff